UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MAURICE CULP, JERRY ROBINSON,        Case No. 13 CV 6913 (AJN)
and JACOB MILLER,
                    Plaintiffs,        **AMENDED COMPLAINT**

    -against-

                                         JURY DEMAND

THE CITY OF NEW YORK, DETECTIVE
BRIAN BRANNIGAN [SHIELD# 6451],
SERGEANT JACK SINATRA [TAX REG.
# 921771], P.O. THOMAS WILLIAMS [TAX
REG. # 943960], P.O. JUAN CARRERO
[SHIELD# 160], LIEUTENANT MICHAEL
GUENTHER [TAX REG. # 920359], and
JOHN DOE AND JANE DOE (the names
John and Jane Doe being fictitious, as the
true names are presently unknown),
                    Defendants.
-----------------------------------------------------------------X



Plaintiffs, MAURICE CULP, JERRY ROBINSON and JACOB MILLER, by their attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, Detective Brian Brannigan [Shield# 6451], Sergeant Jack Sinatra [Tax Reg. # 921771], P.O. Thomas Williams [Tax Reg. # 943960], P.O. Juan Carrero [Shield# 160], Lieutenant Michael Guenther [Tax Reg. # 920359],and John Doe and Jane Doe (collectively, "defendants"), respectfully allege as follows:

NATURE OF THE ACTION

1.     This is an action at law to redress the deprivation of rights secured to the plaintiffs under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiffs by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

JURISDICTION

2.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First,

       Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## THE PARTIES

4. Plaintiffs are and were at all times material herein residents of the United States and the State of New York.

5. At all relevant times, defendants Detective Brian Brannigan [Shield# 6451], Sergeant Jack Sinatra [Tax Reg. # 921771], P.O. Thomas Williams [Tax Reg. # 943960], P.O. Juan Carrero [Shield# 160], Lieutenant Michael Guenther [Tax Reg. # 920359], and John Doe and Jane Doe (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

6. At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

7. At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

8. Plaintiffs are suing the defendant officers in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9. On or about July 10, 2013, at approximately 10:30 p.m., defendant officers, acting in concert, arrested the plaintiffs without cause at or close to the

2

|     | |
| --- | --- |
|     | intersection of Broadway and West 125th Street, New York, New York, and charged each plaintiff with PL 265.01(1) 'Criminal possession of a weapon in the fourth degree', among other charge(s). |
| 10. | Plaintiffs, however, were not in possession of any weapon and did not commit any offense against the laws of New York City and/or State for which any of the arrests may be lawfully made. |
| 11. | Prior to the arrests, plaintiffs had returned home from a visit to their sister in Yonkers and were in the process of parking their vehicle when defendant officers suddenly stopped them. |
| 12. | When the plaintiffs inquired as to the reason why they were stopped, defendant officers stated that the plaintiffs did not use their parking light. |
| 13. | Plaintiffs were then immediately ordered by defendant officers to submit themselves to an illegal search, with defendant officers pushing, shoving and kicking the plaintiffs. |
| 14. | Defendant officers searched the plaintiffs and their vehicle on at least three (3) separate occasions. |
| 15. | Even though defendant officers did not find anything illegal, defendant officers nonetheless tightly handcuffed the plaintiffs with their hands placed behind their backs. |
| 16. | When plaintiffs requested defendant officers to loosen the handcuffs as the handcuffs were too tight and were cutting into their skin causing them to experience pain and numbness, defendant officers refused. |
| 17. | After falsely arresting the innocent plaintiffs, defendant officers forcibly pushed the plaintiffs into their police vehicle and transported the plaintiffs to the NYPD-26th Precinct. |
| 18. | Eventually, after detaining the plaintiffs at the precinct for a lengthy period of time, plaintiffs were transported to the Central Booking to await arraignment even though the plaintiffs did not commit any crime or offense and defendant officers did not find anything illegal from their unlawful and unreasonable search of the plaintiffs. |

19. While plaintiffs were awaiting arraignment, defendant officers met with prosecutors employed by the New York County District Attorney's Office.

20. During this meeting, defendant officers falsely stated to the prosecutors, among other things, that the plaintiffs were in possession of a weapon.

21. Based on the false testimony of the defendant officers, the prosecutors initiated criminal action against the plaintiffs.

22. That the prosecutors subsequently conducted an independent investigation and concluded that there was no evidence of any crime committed by the plaintiffs.

23. As a result, the prosecutors declined to prosecute the plaintiffs.

24. Eventually, after detaining the plaintiffs for approximately twenty four (24) hours, defendant officers summarily released the plaintiffs from their unlawful detention.

25. Additionally, on or about March 21, 2013, at approximately 5:30 p.m., defendant officers, acting in concert, arrested Mr. Culp without cause at or close to the intersection of Amsterdam Avenue and West 125th Street, New York, New York, and charged Mr. Culp with PL 205.30 'Resisting arrest', among other charge(s).

26. Mr. Culp, however, did not resist any lawful arrest and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

27. Prior to the March 21, 2013 arrest, Mr. Culp was on his way to a corner store near his home when defendant officers suddenly approached Mr. Culp and stopped him.

28. When Mr. Culp inquired as to the reason why he was stopped, defendant officers started grabbing, kicking and hitting the plaintiff with great force causing the plaintiff to sustain serious injuries on various parts of his body.

29. The defendant officers then proceeded to tightly handcuff Mr. Culp with his hands placed behind his back.

30. The defendant officers ignored Mr. Culp's entreaties to loosen the handcuffs as the handcuffs were too tight and were cutting into his skin causing him to experience pain and numbness.

31. After falsely arresting Mr. Culp, defendant officers forcibly pushed Mr. Culp into their police vehicle and transported Mr. Culp to the NYPD-26th Precinct.

32. Eventually, Mr. Culp was transported by EMS to the Harlem Hospital Center where he was seen and/or treated for his injuries.

33. After detaining Mr. Culp at the precinct for a lengthy period of time, Mr. Culp was transported to the Central Booking to await arraignment even though Mr. Culp did not commit any crime or offense.

34. While Mr. Culp was awaiting arraignment, defendant officers met with prosecutors employed by the New York County District Attorney's Office.

35. During this meeting, defendant officers falsely stated to the prosecutors, among other things, that Mr. Culp resisted a lawful arrest.

36. Based on the false testimony of the defendant officers, the prosecutors initiated criminal actions against Mr. Culp.

37. Upon arraignment, bail was set to secure the release of Mr. Culp.

38. Because Mr. Culp could not make bail, Mr. Culp was transported to Rikers Island Correctional Facility, and was incarcerated at said facility for several days following his arrest.

39. Eventually, on or about or about June 28, 2013, the false charges levied against Mr. Culp were summarily dismissed.

40. That each and every officer who responded to and/or was present at the location of the arrests and/or at the precinct or facility knew and was fully aware that the plaintiffs did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

41. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

42. As a result of the aforesaid actions by defendant officers, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, financial losses, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

43. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 42 of this complaint as though fully set forth herein.

44. The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, abuse of authority, malicious abuse of process, failure to intervene, illegal and unreasonable stop, frisk, search and seizure, racial profiling, pattern of harassment, conspiracy, fabrication of evidence, denial of freedom of speech, first amendment retaliation, denial of equal protection of the laws, discrimination, cruel & unusual punishment, denial of right to a fair trial, denial of due process rights and malicious prosecution.

45. Such conduct violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

46. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

47. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 46 of this complaint as though fully set forth herein.

48. Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their

|     | |
| --- | --- |
|     | properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest. |
| 49. | Additionally, defendant City of New York, acting through District Attorney Cyrus R. Vance, Jr. and the Office of the District Attorney of the New York County, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court. |
| 50. | Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiffs, who are blacks, on the pretext that they were involved in some crime or offense. |
| 51. | Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct. |
| 52. | For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling. |
| 53. | In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New |

York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

54. Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

55. Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

56. In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

57. Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

58. Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests.

|   |   |
|---|---|
|   | *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011). |
| 59. | Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs. |
| 60. | That Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records. |
| 61. | That the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes . . . ." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed." |
| 62. | Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure." |
| 63. | In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher |

|     | Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman, Sergeant Bobby Hadid and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein. |
|-----|---|
| 64. | Upon information and belief, many of the individual defendants herein have a lengthy substantiated history of police misconduct, fraud and dishonesty. Further, many of the named individual defendants herein are named defendants in numerous lawsuits in this district and in the Eastern District of New York alleging similar claims as those alleged herein -- many of which lawsuits have been settled by defendant City of New York with said defendant making substantial monetary payments to the plaintiffs in the said lawsuits. |
| 65. | In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-26th Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses. |
| 66. | That most of the arrests and charges made by officers assigned to the NYPD-26th Precinct are usually voided and/or dismissed by prosecutors for lack of evidence. |
| 67. | That defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-26th Precinct in connection with the unlawful arrests and charges described herein. |
| 68. | That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and |

employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

69. The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in their person and property, to be free from abuse of process, racial profiling, the excessive use of force and the right to due process.

70. By these actions, defendants have deprived plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: 42 U.S.C. § 1985

71. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 70 of this complaint as though fully set forth herein.

72. In an effort to find fault to use against the plaintiffs, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiffs who are blacks of their constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to United States Constitution, because of their race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

73. In light of the foregoing therefore, defendant officers engaged in a conspiracy designed to deprive the plaintiffs of their constitutional and federal rights in violation of 42 U.S.C. § 1985.

74. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore stated.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

75. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 74 of this complaint as though fully set forth herein.

76. By reason of the foregoing, and by arresting, detaining and imprisoning plaintiffs without probable cause or reasonable suspicion, and harassing and assaulting them and depriving the plaintiffs of due process and equal protection of laws, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

77. In addition, defendant officers conspired among themselves and conspired with other individuals to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

78. Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

79. Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiffs' state constitutional rights.

FIFTH CAUSE OF ACTION: ASSAULT AND BATTERY

80. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 79 of this complaint as though fully set forth herein.

81. The conduct of defendant officers, as described herein, amounted to assault and battery.

82. By reason of and as a consequence of the assault, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to reputation.

83. Upon information and belief, defendant City of New York had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City of New York failed to take any appropriate actions to assure plaintiffs' safety and security and failed to protect and/or safeguard plaintiffs' interests.

84. That defendant City of New York's failure to assure plaintiffs' safety and security was a proximate cause of plaintiffs' injuries.

SIXTH CAUSE OF ACTION: OTHER NEW YORK TORTS

85. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 84 of this complaint as though fully set forth herein.

86. The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, illegal and unreasonable stop, frisk, search and seizure, negligence, defamation, conspiracy, special injury, loss of consortium, malicious abuse of process, harassment, tortuous interference, abuse of power, fraud, trespass and malicious prosecution.

87. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTH CAUSE OF ACTION: NEGLIGENT & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

88. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 87 of this complaint as though fully set forth herein.

89. The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to the plaintiffs.

90. Plaintiffs' emotional distress has damaged their personal and professional lives because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the assault, detention and imprisonment by defendants.

91. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

EIGHTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES

92. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 91 of this complaint as though fully set forth herein.

93. Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action, owed a duty of care to the plaintiffs to prevent the physical and mental abuse sustained by the plaintiffs.

94. Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action owed a duty of care to the plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to the plaintiffs or to those in a like situation would probably result from such conduct described herein.

95. Upon information and belief, defendant City of New York, knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

96. Upon information and belief, defendant City of New York's negligence in hiring and retaining the defendants proximately caused plaintiffs' injuries.

Upon information and belief, because of defendant City of New York's negligent hiring and retention of defendant officers, plaintiffs incurred and sustained significant and lasting injuries.

WHEREFORE, plaintiffs respectfully pray judgment as follows:

a. For compensatory damages against all defendants in an amount to be proven at trial;

b. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c. For costs of suit herein, including plaintiffs' reasonable attorney's fees; and;

d. For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

Dated: Brooklyn, New York
February 21, 2014

UGO UZOH, P.C.

By: Ugochukwu Uzoh (UU-9076)
Attorney for the Plaintiffs
304 Livingston Street, Suite 2R
Brooklyn, N.Y. 11217
Tel. No: (718) 874-6045
Fax No: (718) 576-2685
Email: u.ugochukwu@yahoo.com